2016 AUG 15 PM 4:07

DATE FILED: August 15, 2016
CASE NUMBER: 2016CV2020

| | |
|---|---|
| La Plata County, Colorado<br>Court Address: 1060 E. 2nd Ave<br>Durango, CO 81301 | |
| Plaintiff: LAURA WATERS,<br><br>v.<br><br>Defendant: ROCKY MOUNTAIN CONFERENCE OF SEVENTH-DAY ADVENTISTS, a Colorado Nonprofit Corporation. | ▲ COURT USE ONLY ▲ |
| Attorney or Party Without Attorney:<br><br>Name: Laura Waters<br>Address: 111 Elk Lane<br>Durango, CO 81301<br>Phone Number: 970-749-3164<br>E-mail: lauradriver5@gmail.com | Case Number:<br>16CV2020<br>Div.: 5   Ctrm: |

### COMPLAINT

Plaintiff complains as follows:

1. Plaintiff Laura Waters (f/k/a Laura Driver) is a resident of Durango, La Plata County, Colorado.

2. Defendant Rocky Mountain Conference of Seventh-day Adventists (Conference) is Colorado Nonprofit Corporation.

3. The Conference has its headquarters in Denver, Colorado.

4. The Conference had more than 500 employees at all relevant times.

5. At all relevant times, Defendant was covered by the definitions of "employer" set forth in 42 U.S.C. §12111(5) of the Americans with Disabilities Act, as amended (ADA), 42 U.S.C. § 12101, *et seq.* and 42 U.S.C. § 2000e of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

6. Venue is proper in La Plata County because the torts and conduct described below were committed therein, and because Defendant may be found in La Plata County.

1

7. Ms. Waters was employed by the Conference as a teacher at Columbine Christian School in Durango from 2008 to 2013.

8. Columbine Christian School is a private Seventh Day Adventist school.

9. Ms. Waters is a Christian, but not a Seventh Day Adventist.

10. The Conference was aware of Ms. Waters's religious belief at the time it hired her.

11. The Conference told Ms. Waters that she would only be classified as part-time because she was not a Seventh-Day Adventist.

12. Despite being classified as part-time, she in fact worked full time, teaching first and second grade students.

13. Plaintiff was supervised by Principal May Oles and Assistant Principal Jeni Graham.

14. Columbine Christian students used a hill on the school campus for sledding during the winter months.

15. On January 17, 2012, Ms. Waters was supervising Columbine Christian students sledding during recess when she fell on the hill.

16. As a result of the fall, Ms. Waters suffered a dislocated jaw, ruptured jaw joint, damaged neck joints, and a sliced mouth.

17. On June 1, 2012, Ms. Waters suffered another fall, which injured her knee.

18. Ms. Waters scheduled the knee surgery over Christmas break.

19. However, Ms. Waters required additional time to recover, and was on FMLA leave for three weeks after Christmas break ended.

20. Ms. Waters scheduled her jaw surgery from the January 2012 fall over spring break 2013.

21. Ms. Waters scheduled both surgeries over school breaks in order to minimize disruptions to her teaching schedule.

22. Her physician placed her on a four-hour day work restriction after the jaw surgery.

23. That four-hour restriction lasted until the end of the 2012-2013 school year.

24. Columbine Christian required Ms. Waters to find her own substitutes to cover her teaching responsibilities for the four hours she was out during the rest of the 2012-2013 school year.

25. Columbine Christian complained about Ms. Waters's choices for substitute teachers, criticizing her for using parents' but did not criticize other non-disabled or Seventh Day Adventist teachers for the same choice.

26. Principal Oles repeatedly requested that Ms. Waters teach full eight-hour days despite its knowledge of her medical restrictions because Columbine Christian preferred that she be in the classroom herself rather than a substitute teacher.

27. On May 8, 2013, the Conference sent Ms. Waters a letter congratulating her on her outstanding teaching performance during that school year.

28. Principal Oles sent a letter to the parents of Ms. Waters' students, describing Ms. Waters' personal health issues on May 10, 2013. That letter stated Ms. Waters return to teaching that fall would be on hold until there was further medical information.

29. Principal Oles attempted to schedule meetings with Ms. Waters on weekends and evenings concerning her work restrictions.

30. Ms. Waters eventually met with Principal Oles on May 13, 2013, regarding "a few concerns" from parents.

31. Ms. Waters had a second jaw surgery scheduled for May 24, 2013, after the end of the school year; however, the Conference's health insurance company rescheduled the surgery for the next week.

32. Principal Oles again attempted to schedule meetings with Ms. Waters when Principal Oles knew that Ms. Waters was unable to meet because of the surgery.

33. On June 4, 2013, an attorney for Ms. Waters sent Principal Oles and Board President Doug Phelps a letter on behalf of Ms. Waters, stating that the Conference's treatment of Ms. Waters was discriminatory and requesting that the Conference meet with Ms. Waters the next week when she had time to recover from her surgery.

34. In a letter dated June 7, 2013, the Conference declined to renew Ms. Waters's contract for the 2013-2014 school year.

35. That letter does not provide a reason for Ms. Waters's termination.

36. Principal Oles did not contact Ms. Waters until June 11, 2013 to send the letter to her via e-mail.

37. Prior to her medical restrictions and complaints about discrimination, Ms. Waters had had her contract renewed each year without issue.

38. In fact, on May 31, 2013, Assistant Principal Jeni Graham asked Ms. Waters for her textbook order as soon as possible.

39. After the Conference decided not to renew Ms. Waters's contract, Principal Oles said that she would write Ms. Waters a letter of recommendation.

40. Assistant Principal Graham also agreed to write Ms. Waters a letter of recommendation on June 30, 2013.

41. On July 8, 2013, Principal Oles stated that she could not provide Ms. Waters a letter of reference because she "must give deference to the conference's advice on how to proceed."

42. She continued that, "After receiving a letter from your lawyer, the conference also contacted its lawyer. I suppose this is what the results look like."

43. That same day, Assistant Principal Graham also stated she could not provide Ms. Waters a letter of recommendation.

44. To date, despite diligent efforts, Ms. Waters has struggled to find replacement employment because she does not have any letters of recommendation from faculty at Columbine Christian.

45. On March 27, 2014, Ms. Waters filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), alleging violations of the ADA and ADEA, and retaliation.

46. The EEOC issued a Letter of Determination with respect to the Charge, finding that there was "reasonable cause to believe Charging Party was terminated from her position as a teacher and retaliated against in violation of the ADA."

47. Conciliation efforts by the EEOC were unsuccessful.

48. On May 17, 2016, the EEOC issued a Notice of Right to Sue.

## FIRST CLAIM FOR RELIEF
### (Americans with Disabilities Act – Discrimination)

49. Ms. Waters was at all relevant times a qualified individual with a disability within the meaning of the ADA, and could perform her essential job functions with or without a reasonable accommodation.

50. At all relevant times Plaintiff had an actual disability under 42 U.S.C. §12102(1)(A), had a record of a disability under 42 U.S.C. §12102(1)(B), and/or was regarded by the Conference as disabled within the meaning of 42 U.S.C. §12102(1)(C).

51. Plaintiff was terminated because of her actual, recorded or perceived disability in violation of the ADA.

52. As a direct and proximate result of the Conference's discrimination against Plaintiff, Plaintiff has suffered damages consisting of past and future lost wages and benefits, lost future earning capacity, diminished reputation, and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

## SECOND CLAIM FOR RELIEF
### (Americans with Disabilities Act – Failure to Accommodate)

53. The foregoing allegations are realleged and incorporated by reference.

54. Plaintiff requested scheduling accommodations based on documented medical restrictions to only teach four hours per day.

55. Plaintiff also requested scheduling accommodations for meeting times with Principal Oles.

56. The Conference failed to grant these requested accommodations for her disability, in violation of the Americans with Disabilities Act.

57. As a direct and proximate result of the Conference's failure to accommodate Plaintiff, Plaintiff has suffered damages consisting of past and future lost wages and benefits, lost future earning capacity, diminished reputation, and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

### THIRD CLAIM FOR RELIEF
### (Americans with Disabilities Act – Retaliation)

58. The foregoing allegations are realleged and incorporated by reference

59. Plaintiff participated in statutorily protected activity by requesting reasonable accommodations and opposing practices made unlawful under the ADA, including her attorney's June 4, 2013 letter.

60. The Conference terminated Plaintiff because of her protected activity in violation of 42 U.S.C. § 12203 of the Americans with Disabilities Act.

61. As a direct and proximate result of the Conference's discrimination against Plaintiff, Plaintiff has suffered damages consisting of past and future lost wages and benefits, lost future earning capacity, diminished reputation, and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

### FOURTH CLAIM FOR RELIEF
### (Title VII – Religious Discrimination)

62. The foregoing allegations are realleged and incorporated by reference

63. Plaintiff was subject to disparate treatment during her employment, including classifying her as a part-time teacher and filing to provide her benefits, and terminated because of her religion (Christian, non-Seventh Day Adventist).

64. As a direct and proximate result of the Conference's discrimination against Plaintiff, Plaintiff has suffered damages consisting of past and future lost wages and benefits, lost future earning capacity, diminished reputation, and other pecuniary losses, and emotional pain and suffering, mental anguish, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

### DEMAND FOR JUDGMENT

Plaintiff therefore demands judgment in her favor and against Defendant as follows:

A. For past and future wage losses, lost earning capacity, and benefits and other pecuniary losses;

B. For reputational damages, emotional distress, inconvenience, humiliation, mental suffering, loss of enjoyment of life and other nonpecuniary damages;

6

C. For prejudgment and postjudgment interest;

D. For attorney fees under the ADA and Title VII;

E. For costs; and

F. Such other relief as the Court deems proper.

Dated: August 15, 2016

*Laura Waters*
Laura Waters
111 Elk Lane
Durango, CO 81301

Pursuant to C.R.C.P. 11(b), this pleading was prepared with the drafting assistance of:

Matt Molinaro, #47814
Law Office of David Lichtenstein, LLC
1556 Williams St., Suite 100
Denver, CO 80218
Telephone: (303) 831-4750
Facsimile:  (303) 863-0835
matt@lichtensteinlaw.com

Plaintiff has been advised that this Complaint must contain this statement.

7