IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-CV-0144-MSK-STV

LAURA WATERS,

    Plaintiff,

*v.*

ROCKY MOUNTAIN CONFERENCE OF SEVENTH-DAY ADVENTISTS,

    Defendant.

---

**OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment (**# 29**), the Plaintiff's Response (**# 32**), and the Defendant's reply (**# 37**). For the following reasons, the Motion is granted, in part.

## I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

## II. BACKGROUND[1]

Plaintiff Laura Waters was a teacher at Columbine Christian School, part of the Rocky Mountain Conference of Seventh-Day Adventists (the Conference), from 2008 to 2013. In January 2012, Ms. Waters suffered multiple injuries after falling on a hill while she was supervising students sledding during recess. Her injuries required multiple surgeries and time away from the classroom to recuperate. After a jaw surgery over spring break during the

---

[1] The Court recounts the undisputed facts and the disputed facts in the light most favorable to Ms. Waters, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

1

2012-2013 academic year, Ms. Waters was placed on a four-hour work restriction by her physician, Dr. Randal Jernigan. Ms. Waters had a second jaw surgery scheduled for May 24, 2013.

On May 2, 2013, Ms. Waters informed Principal May Oles that she had been "diagnosed with a physical disability" and was "not sure if she can teach ever again". When Principal Oles told Ms. Waters that she wanted to know her doctor's opinion as to whether or not she courld work, Ms. Waters responded that she was not making any decisions about teaching during the 2013-2014 school year until she got more information from her doctor. Principal Oles initially asked Ms. Waters to tell her if could return for the next school year by May 15, but then extended the deadline for such information until May 21. On May 20, Ms. Waters sent Principal Oles a text message stating that it was her full intent to return to teach after a summer of healing.

Principal Oles would have "loved" to have had Ms. Waters return working with the same accommodations that the school gave her in 2012-2013, but on May 23 the school board unanimously decided not to renew Ms. Waters' contract. On May 30, Dr. Jernigan placed Ms. Waters on a no-work restriction due to a second jaw surgery. This no-work restriction continued to June 17 and then from July 23 to September 5, 2014.

In her Complaint (# **4**), Ms. Waters brings suit alleging disparate treatment, failure to accommodate, and retaliation under the Americans with Disabilities Act (ADA). The Conference moves for summary judgment (# **29**).

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producers Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV. DISCUSSION

The Conference moves for summary judgment on all three of Ms. Waters' claims, arguing that she cannot establish a *prima facie* case on any.

### A. Discrimination

It is unlawful to discriminate against an individual on the basis of disability with respect "to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Ms. Waters brings her discrimination claim on two distinct theories: disparate treatment on the basis of her disability and a failure to accommodate her disability.

#### *1. Disparate Treatment*

To prevail on a disparate treatment or discrimination claim under the ADA, Ms. Waters must show that the Conference intentionally discriminated against her for a reason prohibited by the statute. *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1306 (10th Cir. 2005). Ms. Waters must have evidence to establish that (1) she is disabled as defined by the Act; (2) she was qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) the Conference discriminated against her because of her disability. *See Mackenzie v. City & Cty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005). To demonstrate discrimination under the third element, Ms. Waters must show that she suffered an "adverse employment action because of the disability." *EEOC v. C.R. England Inc.*, 644 F.3d 1028,

4

1037–38 (10th Cir. 2011).

If Ms. Waters makes out a *prima facie* claim, but there is no direct evidence of discrimination, the Court applies the burden-shifting framework outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *McDonnell Douglas* applies to Ms. Waters' ADA claim. *See Jaramillo*, 427 F.3d at 1306. Once Ms. Waters makes her showing, the burden shifts to the Conference to articulate a legitimate, nondiscriminatory reason for its employment actions. If the Conference proffers such reason, the burden then shifts back to Ms. Waters to ultimately show that the stated reasons are merely "pretextual." *McDonnell Douglas*, 411 U.S. at 804–05.

The Conference moves for summary judgment on this claim based on two arguments: (1) Ms. Waters cannot show the second element — that she was qualified under the ADA — because she was proscribed from working altogether and thus unable to perform the job; and (2) it has legitimate, nondiscriminatory reasons for discharging Ms. Waters.

On May 23, 2013, when the board decided not to renew Ms. Waters' contract, she was on a half-day restriction that had resulted in an accommodation. Her doctor, Dr. Jernigan did not place Ms. Waters on a full-time no-work restriction until May 30, after her contract for school year 2012-2013 was performed and after the board had decided not to renew her contract for the next year. Thus, at the time of the Conference's decision, Ms. Waters was qualified under the ADA.

The Conference also argues that it had legitimate, nondiscriminatory reasons for not renewing Ms. Waters' contract. In particular, it contends that (1) Ms. Waters was not clear in communicating to Principal Oles whether she would be able to return the following school year and (2) Ms. Waters' performance was unacceptable. The Conference says that it needed a clear

5

answer about Ms. Waters' ability to work in 2013-2014 because parents, in turn, needed the information to determine whether their children would reenroll the next year. The Conference characterizes Ms. Waters' answer to Principal Oles' question about returning for the upcoming school year as ambiguous — "it's my full intent to be here full time this upcoming year." #32-1 at 71; *see* # 29-2 at 26. Ms. Waters repeats the statement in her affidavit, "After I texted Ms. Oles on May 20, 2013 that it was my full intent to return the next school year and I expected to heal over the summer, I expected to teaching for Columbine Christian that fall". *See* # 32-1 at 63. The Conference states that it terminated Ms. Waters due to the ambiguity.

The Conference also states that it had several problems with Ms. Waters' performance. Specifically, it identifies that:

- Ms. Waters shared too many personal details with parents and cried in front of students. # 29-2 at 22.
- Ms. Waters failed to apprise school administrators of a planned absence, which caused a "mad scramble" to cover her class. # 29-2 at 22, 28.
- Ms. Waters left one substitute teacher with no lesson plan or schedule. # 29-2 at 28.
- Parents had complained about Ms. Waters. # 29-2 at 30.
- Ms. Waters had a volunteer parent cover her class without notifying school administrators. # 29-2 at 34 ¶ 5.
- Some parents told school administrators that their students would not return the next year if Ms. Waters remained a teacher. # 29-2 at 32.
- A parent complained that Ms. Waters solicited money from parents. # 29-2 at 22, 29-1 at 31 (104:2–15).

Taken as true, the evidence would show legitimate, nondiscriminatory reasons for not

6

renewing Ms. Waters' contract. The burden thus shifts to Ms. Waters to demonstrate that each of these justifications were pretextual, and that the real justification for discharging her was her disability. *See Tyler v. RE/MAX Mtn. States Inc.*, 232 F.3d 808, 814 (10th Cir. 2000). Pretext can be established by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the Conference's proffered reason that a reasonable trier of fact could rationally conclude that the proffered reason is untrue. *Jaramillo*, 427 F.3d at 1308. The Court is mindful that when evaluating pretext, the pertinent question is not whether the employer's proffered reasons were right, wise, or fair, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs. *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004).

Ms. Waters argues that the Conference's justification based on her failure to confirm her ability to return for the 2013-2014 school season was pretextual. She states that she did not think she needed to say more than what she did and that there was no deadline to do so. *See* # 32-1 at 63 ¶ 7. There is a genuine issue of fact as to the existence of a hard deadline, what information needed to be conveyed by the deadline, and whether the request was as to Ms. Waters' physical ability to teach or as to her intent to do so. Much of the communication between Ms. Waters and Principal Oles is by text with varying subject matter interjected at multiple points in time. *See* # 32-1 at 71–80. Given the imprecision and confusion in the communication, a jury could reasonably find as pretextual the justification that Ms. Waters had failed to supply complete and timely information about her return for the following school year.

There is also sufficient evidence to suggest that performance issues were pretext for not renewing Ms. Waters' contract. Principal Oles testified that she would have "loved" to have Ms. Waters back, even with the same accommodations she had at the end of the 2012-2013

academic year, and that it was lack of clarity as to whether Ms. Waters could return that justified not renewing her contract.[2]

In sum, there is sufficient evidence in the record to cast doubt on the Conference's proffered reasons. As a consequence, Ms. Waters has made a *prima facie* showing of discrimination in violation of the ADA. There are genuine issues of material fact requiring a jury trial.

### 2. *Failure to Accommodate*

The ADA provides that an employer is obligated to make any "reasonable accommodations" that may be necessary in order to permit a qualified disabled employee with the ability to perform the essential functions of the job. 42 U.S.C. § 12112(a) (defining "discrimination" under the ADA to include "not making reasonable accommodations"). To establish a *prima facie* case of failure to accommodate in violation of the ADA, Ms. Waters must show (1) she is a qualified individual with a disability, (2) the employer was aware of her disability, and (3) the employer failed to reasonably accommodate the disability. *See Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 836 n.4 (10th Cir. 2011) (citing *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011)). The employee must demonstrate the existence of a facially reasonable accommodation; the burden then shifts to the employer to demonstrate that it was unable to provide that accommodation within the terms of the ADA. *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1264 (10th Cir. 2009). The request for an accommodation does not have to be in writing or be formally made or invoke the "magic words" requesting a reasonable accommodation, but it must make clear that the employee wants assistance with her

---

[2] This deposition testimony is quoted in the Conference's motion but is not included in the record — it cuts off one page earlier, but the Court accepts the Conference's representation of Principal Oles deposition as if it were properly included in the record.

disability.  *C.R. England*, 644 F.3d at 1049.

The Conference argues that it accommodated all of requests that Ms. Waters made.  Ms. Waters responds that she was not accommodated in two ways.  First, she appears to argue that she requested an accommodation of full-time leave over the summer break.  However, this is contradicted by Ms. Waters' admission that all teachers had leave from work over the summer.  *See* # 32 at 10.  Since all able-bodied employees had leave over the summer, any request by Ms. Waters to have leave would not constitute an accommodation.[3]

Ms. Waters identifies only one other accommodation that the Conference failed to provide — failing to adjust its performance standards commensurate with her reduced classroom time.  Specifically, she characterizes some of the Conference's reasons for not renewing her contract as in the nature of "inconsistency in the classroom".  According to Ms. Waters, this is shorthand for problems that resulted from having two teachers in the classroom each day — Ms. Waters in the morning and another teacher in the afternoon.  Apparently, the shift in responsibilities resulted in complaints from parents about students being sent home without books or other materials, confusion about classroom policies, and Ms. Waters not meeting outside of school hours.  Although the failure to modify performance expectations to match accommodations can be considered a failure to make an accommodation, this argument really directed to whether the Conference's justifications for not renewing Ms. Water's contract were pretextual.  Accordingly, this claim is dismissed.

**B.    Retaliation**

---

[3]    There is an alternate interpretation of Ms. Waters' argument, however.  It could be that she is arguing that the Conference should have given her more time to recover and gather information about whether she could return for the next school year.  To the extent that this is what Ms. Waters intends to argue, it is not clear how this constitutes an accommodation.  It may, however, be material in considering whether the justifications given by the Conference were pretextual.

The ADA prohibits retaliation against employees who engage in conduct protected by that Act. 42 U.S.C. § 12203(a). The analysis of an ADA retaliation claim parallels that of a Title VII retaliation claim. *C.R. England*, 644 F.3d at 1051. First, Ms. Waters must establish the three elements of her *prima facie* case: (1) she engaged in protected activity under the Act, (2) she was subjected to an adverse employment action by the employer after or during the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action. *Anderson v. Coors Brewing Co*., 181 F.3d 1171 1178 (10th Cir. 1999).

The Conference argues that Ms. Waters did not engage in protected activity and if she did, its legitimate, nondiscriminatory reasons for not renewing her contract are sufficient to grant summary judgment on the retaliation claim. Particularly, the Conference points to Ms. Waters' deposition testimony, wherein she stated that she never made any complaint of any perceived discrimination. Retaliation, however, does not live and die on formal complaints of discrimination. Merely requesting an accommodation is sufficient to constitute protected activity. *See Jones v. UPS Inc*., 502 F.3d 1176, 1194 (10th Cir. 2007). Here, Ms. Waters sought a number of accommodations for a disability, reasonably exercising her rights under the ADA to continue working throughout her medical procedures. The Conference's reading of what constitutes protected activity is too narrow.

With regard to the Conference's reasons for termination, the factual issues and evidence suggesting pretext are just as applicable to Ms. Waters' retaliation claim. Accordingly, this claim shall proceed to trial as well.[4]

---

[4] There is an apparent overlap between the disparate-treatment claim and the retaliation claim when the only protected activity was exercising her rights to an accommodation under the ADA. In this case, the alleged discrimination is *you cannot have this job because you need an*

10

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (**# 29**) is **GRANTED IN PART**. The Plaintiff's failure-to-accommodate claim is **DISMISSED**. The motion is **DENIED** in all other respects. In accordance with the Trial Preparation Order (**# 28**), the parties shall file a joint final pretrial order, proposed voir dire questions, and proposed jury instructions. The parties shall jointly contact the Court within 14 days to schedule a final pretrial conference.

Dated this 20th day of July, 2018.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Chief United States District Judge

---

*accommodation* and the alleged retaliation is *you cannot this job because you need an accommodation*. The Court does not intend to submit duplicative claims to the jury, so counsel should be prepared to address the overlap at the final pretrial conference.